James F. SMITH, Plaintiff–Appellant,

v.

GENERAL SCANNING, INC., Defendant–Appellee.

No. 88–1917.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1989.

Decided June 8, 1989.

John A. St. Peter, and Edgarton, Ondrasek, St. Peter, Petak & Massey, Fon du Lac, Kathryn M. Bullon–Stommel, Fon du Lac, Wis., for plaintiff-appellant.

Lawrence T. Lynch, Robert K. Drummond, Foley & Lardner, Milwaukee, Wis., John F. Adkins, and Bingham, Dana & Gould, Boston, Mass., for defendant-appellee.

Before WOOD, Jr., POSNER and MANION, Circuit Judges.

MANION, Circuit Judge.

This is the second time we consider this case. James Smith sued his employer, General Scanning, Inc. ("GSI"), alleging that he had been discharged in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The district court granted GSI's motion for summary judgment. Smith appealed, and we vacated the district court's judgment and dismissed the action for Smith's failure to satisfy the state filing requirement contained in 29 U.S.C. § 633(b). *Smith v. General Scanning, Inc.*, 832 F.2d 96 (1987) (*Smith I*). However, we invited Smith to refile his charge with the EEOC and the appropriate state agency, and, after 60 days, to commence a new action in federal district court. We also instructed Smith to plead and prove the existence of equitable grounds for tolling the filing requirement. Smith refiled with both agencies and brought suit in the district court. The district court again did not resolve the equitable tolling issue, opting instead to adopt its earlier decision on the merits in favor of GSI. Although we are troubled by the district court's failure to expressly rule on the equitable tolling issue, we nevertheless affirm its decision on the merits.

## I.

We set forth the facts of this case in our prior decision. Because they are also relevant here, we repeat them:

On October 3, 1980, GSI hired appellant Smith, then 57 years old, to be an Applications Engineer/Sales Person in its Eastern Region motor division office in Boston. A year later the company transferred him to the Central Region [also known as the Midwest region] office in Chicago, as a Sales Engineer, to promote GSI's two basic products, Electro–Optical (laser) Scanners and Electro–Mechanical (strip chart) Recorders. However, Smith was notified by letter dated December 9, 1983, that GSI was closing its Central Region sales office, and that Smith's duties would terminate on December 31, 1983. The reason given

for the termination was that GSI was forced to reduce its sales staff 'because of a second year of flat sales and reduced profits.' Smith was then 60 years old.

Smith filed a charge of age discrimination with the Wisconsin Department of Industry, Labor and Human Relations on June 26, 1984. That agency returned the charge to him for lack of jurisdiction over an employer located in Massachusetts. Thereafter, on September 5 of that year, he submitted the charge to the Boston office of the Equal Employment Opportunity Commission; the EEOC replied that it would not proceed further with its processing of Smith's charge. Smith's third filing was this action, brought in federal district court in Wisconsin on December 6, 1985.

The district court, without addressing the administrative filing requirements of the ADEA, granted GSI's motion for summary judgment on two grounds. It first found that the plaintiff failed to prove an essential element of the prima facie case of age discrimination, qualification for the position. [The sales engineer job description requires that an applicant have a Bachelor of Science degree. Smith admitted in his deposition that he had falsified his resume which stated that he had not only a bachelor's degree but a master's degree as well. The district court found that because Smith did not have the required college degree, he could not show he was qualified to be a sales engineer with GSI.] It further found that, even had Smith established a prima facie case, GSI's reasons for its employment decisions were legitimate and nondiscriminatory. Because Smith was unable to show that his employer's reasons were pretextual, he failed in his final burden. Thus, the court granted GSI summary judgment as a matter of law.

*Smith I,* 832 F.2d at 97 (footnote omitted). After the case was dismissed, Smith refiled with the EEOC, filed a charge for the first time with the Massachusetts Commission Against Discrimination (the proper state agency), and then filed suit in federal district court. The district court then adopted its earlier decision granting summary judgment for GSI.

## II.

### A. *Equitable Tolling*

Smith's post-dismissal filings were untimely. But despite the district court's "duty ... to consider whether an 'equitable exception justifies ignoring [the ADEA's administrative filing procedures],' " *id.* at 100 (quoting *Settino v. City of Chicago,* 642 F.Supp. 755, 759 (N.D.Ill.1986)), it glossed over the tolling issue and instead focused on the merits of this dispute. In the court's order the district judge stated, "[a]lthough I'm not certain that the plaintiff has adequately pled grounds for the tolling of the statute of limitations, I will resolve this case on the merits." It then adopted its earlier decision granting GSI summary judgment.

It is well-settled that the ADEA's administrative filing requirements are not jurisdictional; rather, they are only preconditions to filing suit. *See, e.g., Overgard v. Cambridge Book Co.,* 858 F.2d 371, 374 (7th Cir.1988). Therefore, they are subject to equitable modification. *Stearns v. Consolidated Management, Inc.,* 747 F.2d 1105, 1111 (7th Cir.1984). *See also Husch v. Szabo Food Service Co.,* 851 F.2d 999, 1003 n. 7 (7th Cir.1988). The district court should have discussed whether Smith's belated filings were sufficient under equitable tolling principles. It did not, apparently believing that this was pointless in light of its earlier determination against Smith on the merits. The only way the second decision would have differed from the first, would have been if no grounds for equitable tolling existed. In that event, the case would have been dismissed without even reaching the merits. In either situation, though, the end result is the same: the case is dismissed. Thus, on the unique facts presented here, the district court believed there was no reason to discuss the tolling issue. Because we agree with the district court's determination on the merits, there is no need to remand for a second time on the tolling question, as that

would additionally burden the court's calendar and needlessly increase legal fees. However, we stress that administrative filing requirements under the ADEA, though only preconditions to filing suit, are meant to be more than a hollow gesture. We thus continue to expect litigants (they did so here) and district courts alike to adequately address these issues. Enough has been said on the tolling issue; we now address the merits of Smith's case.

## B. *ADEA Claim*

With respect to a district court's grant of summary judgment, we recently stated:

> A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we must view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion. (Citations omitted.) However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations that there is a *genuine* issue of material fact which requires trial. (Citations omitted.) The party must do more than simply 'show that there is some metaphysical doubt as to the material facts.' (Citations omitted.) 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party there is no "genuine" issue for trial.' (Citations omitted.) 'The court should neither "look the other way" to ignore genuine issues of material fact, nor "strain to find" material fact issues where there are none. . . .' (Citation omitted.)

*Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1363–64 (7th Cir.1988) (quoting *Beard v. Whitley County, REMC*, 840 F.2d 405, 409–10 (7th Cir.1988)) (emphasis in original).

To determine whether a genuine issue of material fact exists, " 'we must consider both the substantive law of employment discrimination and the burdens of proof applicable under this law.' " *Mechnig*, 864 F.2d at 1364 (quoting *Williams v. Williams Electronics*, 856 F.2d 920, 922 (7th Cir.1988)). "[A] terminated plaintiff's ultimate burden in an age discrimination case is to prove that he was discharged because of his age." *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988).

A plaintiff alleging age discrimination may satisfy his burden in one of two ways. First, he can present direct or circumstantial evidence that age was the determining factor in his discharge. *Id.* By far, however, the more common method is to employ the burden-shifting analysis developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). With slight modification, this framework has been adapted to age discrimination cases under the ADEA. *Oxman*, 846 F.2d at 452.

■ In a reduction in force case ("RIF"), as here, a plaintiff can establish a prima facie case by showing: (1) that he was within the protected age group; (2) that he was performing according to his employer's legitimate expectations;[1] (3) that he was terminated; and (4) that others not in the protected class were treated more favorably. *Id.* at 455 (overruling *Matthews v. Allis–Chalmers*, 769 F.2d 1215 (7th Cir. 1985)). If a plaintiff makes this showing, a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant employer to articulate legitimate and nondiscriminatory reasons for the discharge. *Oxman*, 846 F.2d at 453.

---

1. As we explained in *Oxman, supra,* and as will be of some importance in this case, the second factor originally required that the plaintiff be qualified for the job. *Id.* at 452 n. 2. That was because *McDonnell Douglas* involved a claim of discriminatory hiring. In discharge cases, such as here, the "more appropriate concern" is "job performance, into which the question of qualifications merges." *Oxman*, 846 F.2d at 452 n. 2; *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 n. 2 (7th Cir.1984) (where long-term employee's discharge is at issue, the more appropriate concern would appear to be job performance).

Satisfaction of the defendant's burden "dissolves" the presumption of discrimination and shifts the burden back to the plaintiff to prove the defendant's proffered reasons are a pretext for discrimination. *Id.* The plaintiff must focus on the specific reasons advanced by the defendant to support the discharge. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1414 (7th Cir.1984). This may be accomplished by "showing either that a discriminatory reason more likely than not motivated the employer or that the employer's proffered explanation is incredible." *Oxman* at 453. The plaintiff may establish that the employer's proffered reasons are unworthy of belief in any of three ways: "by showing that the Company's reasons have no basis in fact, or, if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they are factors, by showing that they were ... insufficient to motivate the discharge." *La Montagne,* 750 F.2d at 1414–15 (footnote omitted); *Mechnig,* 864 F.2d at 1365; *Kier v. Commercial Union Insurance Companies,* 808 F.2d 1254, 1259 (7th Cir.), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987).

The district court granted summary judgment on two alternative grounds. First, it held that Smith failed to establish even a prima facie case because he could not show he was qualified to be a sales engineer, as he lacked the requisite college degree. Second, the court stated that even assuming Smith had produced sufficient evidence to establish a prima facie case, he did not demonstrate that GSI's proffered reasons for his termination (RIF and consequent reorganization), were a pretext for discrimination. We agree only with the latter ground.

■ Smith admitted in his deposition that he had falsified his resume and did not possess either a B.S.M.E. (Bachelor of Science degree in mechanical engineering) or an M.S.M.E. (Master of Science degree in mechanical engineering). *Smith I* at 97 n. 1. The sales engineer job description required that applicants have a Bachelor of Science degree. Thus, even though Smith had been hired and had apparently performed satisfactorily (his performance evaluations did reflect a downward trend, but GSI never contended Smith's actual performance was unacceptable), he lacked the minimum requirements for his job. This, the district court reasoned, precluded Smith from establishing a prima facie case because he could not show he was qualified, his initial burden in the *McDonnell Douglas* scheme. We disagree.

The district court's application of the burden-shifting analysis was far too rigid. "The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *United States Postal Service v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). By narrowly focusing on Smith's initial burden as it concerned his qualifications, the district court was distracted from the real issue in this case. At issue is the lawfulness of Smith's termination. His resume fraud clearly had nothing to do with that; it surfaced only after Smith was terminated and after this suit was commenced. Whether GSI discriminated against Smith must be decided solely with respect to the reason given for his discharge, namely, the RIF and reorganization. His resume fraud is, for this purpose, irrelevant.[2] *Cf. Overgard,* 858 F.2d at 377 ("determination of whether an employer violated ADEA with

---

2. But while it may be irrelevant to the issue we face here, there might be cases where it would be highly relevant. For example, had we concluded that GSI violated the ADEA when it terminated Smith, the question of reinstatement and backpay liability would arise. In that case, it would hardly make sense to order Smith reinstated to a job which he lied to get and from which he properly could be discharged for that lie. *See Summers v. State Farm Mutual Automobile Insurance Co.,* 864 F.2d 700, 704–05, 708 (10th Cir.1988). The same would be true regarding any backpay accumulation after the fraud was discovered.

knowledge or reckless disregard turns on employer's mental state when the alleged violation was committed"); F. Elkouri, E. Elkouri, *How Arbitration Works*, p. 675 (4th ed. 1985) (in labor arbitration, discharge must stand or fall upon the reason given at the time of discharge).

Moreover, the district court's analysis focuses too much on Smith's qualifications rather than on his actual performance. Where, as here, a long-term employee is involved, the "more appropriate" inquiry is performance, into which the question of qualifications merges. *Oxman*, 846 F.2d at 452 n. 2; *La Montagne*, 750 F.2d at 1409 n. 2. Smith's performance, though declining according to his evaluations, was never deemed unacceptable. No mention is made of any discipline taken, besides some—how many we are not told—oral counseling sessions, in regard to Smith's performance. From the record before us, we can only conclude that Smith was getting the job done and meeting GSI's expectations.

Smith easily satisfies the remaining elements of a prima facie case. Being 60 years old when terminated, he was within the protected age group. Further, he was terminated while others not in the protected class were treated more favorably (e.g., Camille Bourassa, a sales engineer retained in GSI's West region, who was 25 years old at the time). Accordingly, the burden shifted to GSI to articulate legitimate and nondiscriminatory grounds for Smith's termination.

■ GSI presented several lawful reasons for Smith's termination. In mid–1983, GSI hired D. Westervelt Davis as vice president for marketing. Within five months, Davis determined that GSI's sales force needed reorganizing because of declining sales and rising costs. At that time, there were five sales employees, including Smith, in three regional locations. Albert Beauregard and Mark McPike operated out of the Eastern region. Beauregard sold only the electro-mechanical (recorder) products and McPike sold only electro-optical products. In the Western region there were two sales engineers, Camille Bourassa and Richard Golino, each of whom sold both products. Smith was the Midwest region's lone sales engineer. He sold both products.

In the face of steadily declining national sales (in the Midwest, Smith's region, sales were down 21.6% compared to only 13.5% nationally) and increased sales department expenses, GSI eliminated the Midwest region sales office. The remaining regions (East and West) were to equally absorb the Midwest region's business. To increase efficiency and promote greater technical expertise, Davis also decided the sales engineers should specialize in one or the other of GSI's product lines (as Beauregard and McPike were already doing). After weighing several factors, it was decided that Smith would be terminated.

Of the five sales employees, Smith had the least amount of seniority. Under GSI's seniority system, the employee's total length of service with GSI, not simply length of time in a particular position, is counted toward his seniority. Thus, while Smith had actually worked longer as a sales engineer than Bourassa,[3] Bourassa had more overall seniority than Smith. Bourassa was also already firmly established in the West region. Moreover, Bourassa's performance evaluations were better than Smith's. Deane Geddes, the sales manager for electro-optical products, had rated Bourassa higher both in performance and in the increasingly important "job knowledge" category. By contrast, Geddes was troubled by Smith's lack of understanding regarding the electro-optical scanners. Further, Smith's most recent evaluations (both overall and those done by Geddes) indicated a downward trend, while Bourassa's ratings had stayed the same— and higher than Smith's. GSI plainly shifted the burden back to Smith to prove that its reasons were pretextual. *Oxman*, 846 F.2d at 456; *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1215–16 (7th Cir.1985).

---

**3.** In his attempt to show GSI's explanations were a pretext for discrimination, Smith chose to compare himself only with Bourassa. He thus does not challenge GSI's decision to retain the other sales engineers instead of him.

Thus, as in *Oxman, supra,* this case turns on whether Smith produced sufficient evidence to suggest that GSI's proffered reasons are pretextual so as to survive GSI's summary judgment motion. He did not.

Smith tried to show GSI's reasons had no basis in fact. *Mechnig,* 864 F.2d at 1365; *Kier,* 808 F.2d at 1259; *La Montagne,* 750 F.2d at 1414–15. First, Smith argued that GSI's actions subsequent to his discharge belied any alleged economic difficulty which would have necessitated his termination. Second, he contends that the evidence contradicts GSI's assertion that Bourassa was a better performer.

Smith challenged GSI's decision to undergo any reorganization, asserting that a mere one-year decline in sales did not justify so drastic a response as his termination. But whether there was only a slight decline, and whether in any event it was wise for GSI to react by cutting its sales force, is beyond the scope of our inquiry. In a basic sense, we lack the competence or necessary information to make such a decision. At any rate, it is not our purpose to second-guess an employer's good faith business decision. *Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1426 (7th Cir.1986). As we frequently have stated:

> we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale* [*v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986)]. "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.1987). Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Id.*

*Mechnig,* 864 F.2d at 1365. *See also Tice,* 761 F.2d at 1215 n. 6. There is no evidence

that GSI's reorganization decision, made in response to its perceived financial troubles, was not made in good faith. That Smith thinks it was too severe is, to put it bluntly, irrelevant.

■ To show there was no real economic necessity requiring his termination, Smith also provides a variety of statistics and other evidence. Thus, he tells us that in 1984 GSI hired 106 new employees (only nine of whom were over 40), including one sales and two marketing assistants. But Smith failed to include the relative qualifications of those hired and, except for the three mentioned, he omitted any mention of which positions these employees were assigned to. This does not provide evidence of discrimination. *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943–44 (6th Cir. 1987). Moreover, what we do know of the new hires' positions convinces us that the statistics are meaningless. The three identified positions (sales and marketing assistants) in no way resembled Smith's former sales engineer job. The three jobs involved hourly employees hired in the Boston area to process orders or to mail literature in response to advertisements. This hardly undercuts GSI's decision to trim its sales engineer staff.

Further, the fact that only nine of the 106 new hires were over 40 tells us nothing, since Smith omitted vital information regarding the pool of applicants and whether qualified older employees were available or even applied for those jobs. *Id.;*[4] *Kier,* 808 F.2d at 1258 ("we are dubious of statistical evidence of hiring which fails to account for the applicant pool."). In the absence of evidence regarding the qualified potential applicants from the relevant labor market, we find Smith's statistics fail in any way to show discrimination.

Smith's second challenge to GSI's proffered reason relates to its decision to retain Bourassa rather than Smith. Here, he in effect quarrels with GSI's seniority system,

---

**4.** Smith also relies on the fact that Davis, GSI's then new vice president and the decisionmaker, was only 36 at the time the decision to terminate Smith was made. By itself this does not create a reasonable inference of discrimination. Moreover, even when Davis' age is considered together with Smith's other evidence, we are not persuaded that there is a genuine issue of fact regarding pretext. Likewise, Smith's other statistical evidence does not show that GSI's reasons were pretextual.

arguing his experience is more relevant than Bourassa's and that that should have weighed in his favor. Smith also contends that his and Bourassa's evaluations did not accurately reflect their relative abilities. Once again Smith's arguments collide head-on with our consistent refusal to "sit as a super-personnel department." *Mechnig*, 864 F.2d at 1365.

Smith does not argue that GSI discriminatorily applied its seniority system; rather, he only questions the system itself. He argues that Bourassa's seniority was accumulated in part while she was only a trainee, thus giving him more seniority as a sales engineer. According to Smith, GSI's use of the seniority system, which ignores his longer service as a sales engineer, was a pretext for discrimination. We disagree. "The ADEA was not intended to legislate seniority rights where none exist in the contract of employment." *Tice*, 761 F.2d at 1217. *See also Midland–Ross*, 823 F.2d at 942 n. 6 ("[w]hen an employer reduces its work for economic reasons, it incurs no duty to transfer the employee to another position within the company."). Thus, the ADEA will not interfere with GSI's decision to reward in its seniority system total length of service as opposed to time in position. We only inquire into whether GSI gave an honest explanation for its behavior. *Mechnig*, 864 F.2d at 1365. Smith does not claim otherwise, and we so hold.

Similarly, Smith does not dispute the fact that his evaluations reflected a downward trend or that they were not as favorable as Bourassa's. Instead, Smith offers explanations as to why we should discount the evaluations. For example, he asserts that, with the exception of Geddes' evaluation (a critical "exception" given the fact that Geddes was GSI's sales manager for its optical products and that the remaining sales engineer would exclusively handle GSI's optical products), his evaluations were consistently above average. (Even so, they were still below Bourassa's.) He adds that Bourassa's evaluations reflect her performance not as a sales engineer,

but as a trainee.[5] This does not create a genuine issue of fact requiring a trial, however. *Cf. Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir.1986) (employee's perception of himself not relevant).

It is undisputed that declining sales and increased costs demanded that some kind of cost-saving measures be taken. Based on the underlying data such as seniority and performance evaluations—none of which Smith contests so far as accuracy is concerned—GSI chose to terminate Smith. Even if we were to believe that GSI made an unwise or mistaken decision or that it exercised poor judgment, the ADEA does not interfere with an employer's good faith business decisions. *See, e.g., Mechnig*, 864 F.2d at 1365. "An employer can fire an employee for any reason, fair or unfair, so long as the decision to terminate is not based on age or some other protected category." *Kier*, 808 F.2d at 1259. Here, the reasons given to justify Smith's termination were entirely lawful, and we will not second-guess them.

We therefore hold that the district court properly granted summary judgment in favor of GSI, and thus affirm.

Affirmed.

---

**5.** While this is apparently true, it made little difference to GSI because, as a comparison of the two job descriptions shows, the positions were, except for a few minor differences, nearly identical.