H. Robert KOTARSKI, Plaintiff,

v.

BINKS MANUFACTURING
COMPANY, Defendant.

No. 92 C 0518.

United States District Court,
N.D. Illinois, E.D.

Nov. 25, 1992.

Memorandum Opinion and Order
Dec. 23, 1992.

Donald B. Levine, Gregg Garrett Rotter Levin & Ginsburg, Ltd., Chicago, IL, for plaintiff.

Max G. Brittain, Jr. and David L. Miller, Kovar Brittain Sledz & Morris, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff H. Robert Kotarski ("Kotarski") sues defendant Binks Manufacturing Company ("Binks") for alleged age discrimination in a termination decision under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Binks moves for summary judgment.

### BACKGROUND

Kotarski claims that Binks discriminated against him on the basis of his age when the company fired him at the age of sixty-six after forty-four years of employment. Kotarski began working for Binks, a spray finishing and coating application equipment manufacturer and distributor, in 1947. Kotarski Aff., 12(n) Ex. B ¶ 2. Except for brief intervals before 1953 (when Kotarski was laid off, and when he served in the armed forces), Kotarski worked continuously for Binks until his termination in May 1991. *Id.* Since 1975, Kotarski had been the inspection department supervisor for Binks' Franklin Park, Illinois plant. Roche Aff. ¶ 4.

Beginning in April 1990, Burke B. Roche, president and CEO of Binks, initiated cost-cutting measures. Roche, responding to a hostile takeover attempt and bad economic conditions, urged employees to cut expenses and increase productivity. Roche Aff. ¶ 21. In a series of memoranda to all managers and department heads, Roche eliminated unauthorized overtime, urged managers to insure their workers were maximizing their productivity, limited sales expenses, and solicited other ideas. *Id.* & Ex. A. As part of these cost-cutting measures, Roche decided to consolidate Kotarski's position as inspection supervisor with that of toolroom supervisor. *Id.* ¶ 19.

Meanwhile, Roche received numerous informal complaints about Kotarski's work. *Id.* ¶¶ 8–15. Specifically, Kotarski's supervisor complained to Roche and suggested that the inspection department needed a change. Strack Aff. ¶¶ 1–8. No formal complaints were ever recorded against Kotarski: He was never disciplined or placed on probation. Kotarski Aff., 12(n) Ex. B ¶ 6. But Kotarski knew that some of the other foremen at

Binks had complaints about his work.[1] Kotarski 7/1/92 Depo. at 47. Kotarski was one of just two foremen who did not receive a pay raise after 1987.[2] Unschuld Aff. ¶ 4.

Roche fired Kotarski on May 17, 1991. As was his custom, Roche called Kotarski into his office and told him his employment was terminated without notice or warning. Roche Aff. ¶ 18. Roche told Kotarski that he had been with Binks "long enough" and that he wanted to "make some changes." Kotarski Aff., 12(n) ¶ 3. Roche told Kotarski he was fired and told him to leave the premises immediately. *Id.* That same day, Binks also let go the only other foreman who had not received a raise since 1987. Unschuld Aff. ¶ 4. Carl Brewer, the 44 year old foreman of the toolroom, took over Kotarski's inspection supervisor duties while continuing to supervise the toolroom. Roche Aff. ¶ 19.

There is no other evidence—or even an allegation—that Binks systematically discriminated against its employees on the basis of age, or that Kotarski was discriminated against because of his age at any time before his termination. Binks has no mandatory age retirement policy. Roche Aff. ¶ 7. All but one of Binks' corporate officers and the company's entire board of directors are more than fifty-five years old. *Id.* Roche, the only person with authority to fire salaried Binks employees, is seventy-eight years old. *Id.* ¶ 2. On the date Kotarski was fired, there were nineteen other supervisors: sixteen were over 40, twelve were over 50, and two were over 60. *Id.* ¶ 21. Four foremen recently fired by Binks were aged 39, 41, 44 and 55. *Id.* ¶ 18.

### DISCUSSION

■ Binks moves for summary judgment under Fed.R.Civ.P. 56. A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the nonmovant fails to make a sufficient showing on an essential element of his case, on which he would bear the burden of proof at trial, summary judgment is proper. *Id.* at 322–23, 106 S.Ct. at 2552–53. Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). Where the entire record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Kotarski claims that Binks violated the ADEA when it fired him. Kotarski argues that he never knew he had performance problems until after he was fired, and that Roche fired him because of his age. The ADEA makes it unlawful for an employer to discharge a person because of her age when she is at least 40 years of age. 29 U.S.C. §§ 623(a)(1), 631(a) (1992). An ADEA plaintiff's ultimate burden is to show she was discharged because of her age. A terminated employee may make out a case under the ADEA in two ways: directly or by shifting

---

1. The extent of Kotarski's knowledge is in dispute. While Roche claims he spoke with Kotarski "on occasion" about the complaints, he admits he never directly informed Kotarski that his job was in jeopardy. *See* Roche Aff. ¶¶ 16, 17. Contradicting his deposition testimony, Kotarski's affidavit states that no one "at Defendant ... ever brought to my attention or told me that they were dissatisfied with my job performance" during his entire forty-four years. *See* Kotarski Aff., 12(n) Ex. B ¶ 8. Kotarski also claims that Roche told him until the time he was fired that he had "a lot of good years left and could stay for as long" as he wanted. *Id.* ¶ 9. This dispute is not material, however, because Kotarski's knowl-

edge is only relevant insofar as it bears on the credibility of Binks' account of the reasons Kotarski was fired. Notice itself is not at issue.

2. This is also in dispute. Kotarski claims he received a raise in 1988, but the records he submits do not, on their face, establish as much. He fails to include his records for 1987. *See* 12(n) Ex. L. But this dispute, like the dispute over the extent of Kotarski's knowledge, is not material: It only bears on the credibility of Binks' account and is not itself a material issue of fact.

the burden of production. First, the plaintiff may prove her employer discriminated against her by showing that her age was the determining factor in her discharge. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). She may use either direct or circumstantial evidence to make that showing. *Id.*

■ Second, an ADEA plaintiff may prove discrimination by the burden-shifting method adopted by the Supreme Court's Title VII decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A discharged plaintiff establishes a prima facie case of age discrimination by showing (1) that she was in the protected age group; (2) that she was performing according to her employer's legitimate expectations; (3) that she was terminated; and (4) that a replacement was sought, or one was found outside the protected class. *Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1318 (7th Cir.1989). A plaintiff who makes this showing raises a rebuttable presumption of discrimination and shifts the burden of production onto the defendant, who must articulate legitimate and nondiscriminatory reasons for the discharge. *Id.; Oxman*, 846 F.2d at 453. Once the defendant makes the showing of a nondiscriminatory reason, the burden of production shifts back to the plaintiff to show the employer's proffered reasons are a pretext for discrimination. *Smith*, 876 F.2d at 1319. A plaintiff establishes pretext by showing that the employer's reasons have no basis in fact or, if the employer's reasons have a basis in fact, by showing that the stated reasons were not the factors actually motivating the discharge, or that they were insufficient to motivate the discharge. *Id.*

■ Kotarski fails to show discrimination by the direct method. Kotarski does not urge this method in his papers, but even if he did, there is not a scintilla of direct or circumstantial evidence in the record suggesting that age was the determining factor in Kotarski's discharge.[3] The overwhelming circumstantial evidence is to the contrary: The majority of officers at Binks are in the protected group; layoffs have occurred across several age groups (including employees outside the protected group); and the person who fired Kotarski is in the protected group.

Kotarski also fails to make out a *prima facie* case under the burden shifting method. Of course, Kotarski shows the first and third elements because he was in the protected group, and he was fired. But Kotarski has not raised a material issue of fact as to either the second or fourth element.

The second element of the burden shifting method requires Kotarski to show that he was performing to Binks' legitimate expectations. Binks offers the affidavits of Kotarski's supervisors as proof that Kotarski was not performing up to expectations. *See* Strack Aff. ¶ 7 ("Kotarski was not cooperating with the foremen [and] quality was suffering and customers were upset"); Unschuld Aff. ¶ 4 ("Kotarski's performance had been declining for several years prior to his termination"); Roche Aff. ¶¶ 6, 8–15 (Kotarski "had become increasingly unproductive"; detailing complaints by other Binks employees about his performance). Kotarski does not claim that he was actually performing up to expectations. Although he says he was never notified that his performance was unsatisfactory, even Kotarski's accounts of his knowledge concerning his unsatisfactory job performance are contradictory.[4] Kotarski

---

3. Roche's parting comment could be inferred as a discriminatory remark. Kotarski's papers intimate as much. *See* Opp. Memo. at 14. Were there other evidence—any other evidence—of discrimination, the inference created by Roche saying Kotarski had been there "long enough" might lend support to that other evidence. By itself, however, Roche's comment is not sufficient to avoid summary judgment. Although Binks must show the absence of a genuine issue of material fact, Kotarski bears the ultimate burden of persuasion. *Smith*, 876 F.2d at 1318. After a 44 year tenure and the complaints Roche had

received against Kotarski, it is not reasonable based on those words alone to draw the inference that age was the determinative factor in Kotarski's discharge. Because a rational trier of fact could not find for Kotarski based only on this conversation, he cannot avoid summary judgment on the theory that he could show discrimination by the direct method at trial. *Cf. Matsushita, supra.*

4. And, of course, his knowledge is irrelevant. *See infra* note 1.

does point to selected deposition excerpts by coworkers and subordinates and manages to establish that he did have areas of competence. But each of these depositions suffers from one or more fundamental defects, and none of them establish, from a supervisor's point of view, that Kotarski's overall performance was satisfactory. *Cf. Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924 (7th Cir.1988). Finally, even if his inspection department performance were satisfactory, that position was eliminated. Kotarski would need to demonstrate that he was qualified for the new combined position of toolroom/inspection supervisor. This he has not done. Keeping in mind that Kotarski would bear the burden of persuasion on this element at trial and that he fails to come forward with any evidence of satisfactory overall performance, Kotarski fails to create a disputed issue of material fact on this issue to defeat summary judgment.

Binks is also entitled to summary judgment because Kotarski fails to show the fourth element—that a replacement was sought, or that he was replaced by a person younger than the protected class. Kotarski's job was eliminated, and his inspection supervisor duties were assumed by the incumbent toolshop supervisor, Carl Brewer. This disposition of Kotarski's duties cannot satisfy the fourth burden shifting element. The utility of the burden shifting method is not that it exhaustively defines when there has been discrimination. Rather, the burden shifting method is a good proxy for direct evidence only because it eliminates the most common nondiscriminatory reasons for the plaintiff's discharge. *Texas Dept. of Comm'y Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Thus, it only has value because the acts, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* When a plaintiff's position is completely eliminated for verified economic reasons and not filled by another employee, showing the other elements does not raise the inference because there is no logical nexus between the actions and discrimination.

Moreover, Kotarski's *duties* were given to someone else in the protected class. Some

circuits recognize that a plaintiff may shift the burden even when his position is filled by another in the protected class. *See, e.g., Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1386–88 (11th Cir.) (certain reduction-in-force situations do not require out-of-class replacement; plaintiff may also show nexus by pattern of discrimination statistics), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). *See also Hillebrand v. M–Tron Indust., Inc.*, 827 F.2d 363, 366 n. 6 (8th Cir. 1987) (citing cases and stating elimination of requirement as black letter rule), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). But there is no comparable precedent in the Seventh Circuit. *See, e.g., Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1390 (7th Cir.1990). The view that the burden shifting framework needs flexibility to take account of the vast subtleties of ADEA cases is well-taken. The burden shifting framework has no *per se* legal significance. *See Pace, supra.* Here, however, there is no substitute for the out-of-class showing. Kotarski has not offered statistics or shown a pattern of downsizing that could ultimately benefit a person not a member of the class. He has failed to establish a logical nexus between Binks' acts and any discrimination.

█ Finally, even if Kotarski had managed to shift the burden, Binks meets its burden of production. Binks points out that the elimination of the inspection supervisor position was part of a cost-cutting program. Kotarski questions the breadth and formality of the program, but he does not dispute that it existed. The elimination of a position in order to consolidate duties with another position for efficiency reasons is a legitimate nondiscriminatory reason for discharge. Kotarski does not contend that the cost-cutting program—or the consolidation of the two positions—was a pretext.

Kotarski attempts to raise a factual dispute regarding pretext. Kotarski's strategy is to point out that Binks' evidence could be better in several areas. For example, Kotarski points out that the cost-cutting program evidenced by memoranda was not extensive or formal; that Binks had offered him an income security agreement in the event of a

## 252

corporate takeover; and that some Binks employees admitted in deposition that Kotarski had areas of competence. Kotarski also makes *ad hominem* attacks on several of the Binks' affidavits and argues that it is not credible to him that he was performing poorly because no employee of Binks ever put him on notice.

Kotarski's argument is misguided on two levels. In the first place, the question of pretext does not become relevant until Kotarski has made a prima facie showing under the burden-shifting method and Binks has articulated a nondiscriminatory reason for discharge. *Smith, supra.* Kotarski does not effectively argue that he has successfully shifted the burden—he jumps right into the question of pretext. But even if pretext were at issue, Kotarski's criticisms do not create a genuine issue of fact. Binks' affidavits establish that Binks was involved in a cost-cutting program, that Kotarski's supervisors felt he was performing poorly, and that his position as inspection foreman was eliminated. It takes contrary evidence, not qualitative criticisms, to create a dispute. Fed.R.Civ.P. 56(e).

### CONCLUSION

Binks' motion for summary judgment is granted. Judgment is entered for defendant Binks Manufacturing Company and against plaintiff H. Robert Kotarski.

### MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

Plaintiff H. Robert Kotarski moves for reconsideration of this court's Memorandum Opinion and Order of November 25, 1992 ("the Memorandum Opinion") granting summary judgment in favor of defendant Binks Manufacturing Company ("Binks") on Kotarski's claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Kotarski contends the court erred by failing to apply the proper standard for summary judgment, by applying the test for a *prima facie* case too rigidly, and by improperly determining that pretext alone cannot make out a *prima facie* case.

### DISCUSSION

Motions for reconsideration serve a limited function. *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir. 1984). *Accord Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985). A court will ordinarily grant a motion to reconsider to correct manifest errors of law or fact or to consider newly discovered evidence that could not have been adduced during the pendency of the previous motion. *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987); *Kohl v. Murphy,* 767 F.Supp. 895, 904 (N.D.Ill.1991). Motions for reconsideration may not raise legal theories or arguments that could have been raised in the original motion. *Id.* at 904. *Accord Woods v. Michigan City,* 940 F.2d 275, 280 (7th Cir.1991).

### I. Summary Judgment Standard

Kotarski claims that the court improperly applied the standard for summary judgment by resolving credibility determinations in favor of Binks. As Kotarski points out, the proper question is whether the evidence presented on summary judgment, viewed in the light most favorable to him, could support a reasonable jury finding that Binks fired him because of his age. *Shager v. Upjohn Co.,* 913 F.2d 398, 399 (7th Cir. 1990). Put another way, the court may grant summary judgment only if a trial at which the same evidence was presented would result in a directed verdict for Binks. *Id.* at 402, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). It is also true that for purposes of summary judgment, ambiguities in a witness' testimony must be resolved against the moving party. *Shager,* 913 F.2d at 402. But evidence must be qualitatively capable of creating a genuine issue of material fact to avoid summary judgment. Evidence that could *in theory* create an inference but that would not allow a *rational* finder of fact to draw that inference will not defeat summary judgment; Kotarski must do more than show that there is some metaphysical doubt as to the facts. *Matsushita Elec.*

*Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

■ Kotarski contends the court improperly resolved questions of credibility against him in concluding that he had not produced evidence that could show that he was performing according to Binks' legitimate expectations. To establish a *prima facie* case under the burden-shifting method, Kotarski was required to show that he was performing according to Binks' legitimate expectations. *See Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1318 (7th Cir.1989). On this element, Binks came forward with unambiguous affidavits from Kotarski's supervisors that Kotarski's performance was unsatisfactory. *See* Memorandum Opinion at 250. Kotarski's own affidavit did not assert that he was performing satisfactorily. Instead, Kotarski relied on "inconsistencies" between his supervisors' affidavits and their deposition testimony and deposition testimony by Kotarski's subordinates to establish a genuine issue of fact.

■ The court held that Kotarski's proffer did not establish a genuine issue, but not (as Kotarski claims) because issues of credibility were resolved in favor of Binks. The court determined that Kotarski's evidence could not qualitatively establish a genuine issue of material fact even if taken as true. None of the purported "inconsistencies" went to the fact at issue: Kotarski's overall performance as a combined toolroom/ inspection supervisor at the time he was fired.[1] Neither did deposition testimony by Kotarski's subordinates, Wayne Maurer or Joseph Myles. The issue is not who was telling the truth. In order to create a genuine issue of material fact, Kotarski was required to offer evidence as to his performance from someone who was in a position to know. Maurer and Myles (both of whom worked for Kotarski) offered testimony that in *their* opinion, Kotarski was performing well and should not have been terminated. Just as the testimony of a hospital orderly could not rationally create an issue of fact as to the quality of a surgeon's performance, testimony from Kotarski's subordinates does not create a genuine issue of material fact as to whether Kotarski was performing in accordance with Binks' legitimate expectations. Even accepting their testimony as true, there is no genuine issue of material fact as to Kotarski's performance level.[2] More importantly, no testimony offered by Kotarski went to his ability to perform in the new combined position of toolroom/inspection supervisor. Because his old position is gone, that is the real question, and Kotarski has failed to provide any relevant evidence at all.[3] The court

---

1. The inconsistency in the testimony by Doran Unschuld, vice president of Binks, purportedly arises from this deposition testimony:

   Q: ... to the company? Did you know that?
   A: No, I didn't.
   Q: Are you surprised to learn this?
   A: No. Bob was a good inspector. He understood quality control.

   Unschuld Dep. at 117. Unfortunately, the deposition excerpt Kotarski provided begins exactly as shown. Kotarski did not provide the question that Unschuld was answering nor establish the time period to which this testimony refers. This testimony does not create a genuine issue of material fact because it does not conflict with Unschuld's affidavit testimony to the effect that Kotarski's performance had been declining in the past several years. Unschuld Aff. ¶ 4. *Cf. Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 403 (7th Cir.1992) (evidence that employee does some things well does not mean that other reasons given for termination were pretext). Nor does the fact that Kotarski received a golden-handshake contract as part of a corporate take-over defense create a genuine issue of material

fact. *See* 12(n) Ex. N. The contract's generic description of him as a "key employee" refers to his position; it makes no reference to his overall performance.

2. Kotarski points out that the memorandum opinion asserts that "none of [these depositions] establish, from a supervisor's point of view, that Kotarski's overall performance was satisfactory." *See* Memorandum Opinion at 250. As Kotarski argues, this phraseology was error. *Cf. Shager, supra.* The correct standard, as it appears in the same paragraph on the following page of the opinion, is that Kotarski "fails to create a disputed issue of material fact on [the performance issue] to defeat summary judgment." The original language should have read "none of [these depositions] *could* establish, from a supervisor's point of view, that Kotarski's overall performance was satisfactory."

3. Kotarski also contends that there is some evidence that his position as inspection supervisor was eliminated rather than consolidated with the duties of toolroom supervisor. *See* Maurer Dep.

properly granted summary judgment after determining that there was no genuine issue of material fact as to Kotarski's performance.

## II. Requirements of *Prima Facie* Case

Kotarski also claims the court erred by holding that in order to establish a *prima facie* case under the burden-shifting method, Kotarski was required to show that he was replaced by someone outside the protected group. In his view, ADEA plaintiffs in cases involving a reduction in work force need not show anything regarding a replacement—discrimination may always be inferred without this evidence. Kotarski urges that *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) supports his position.[4]

The burden-shifting framework may not be rigidly applied in reduction-in-work force cases to require that a plaintiff show that he was replaced by an employee outside the protected class. *Stumph*, 770 F.2d at 96. Where a person's job is eliminated, even though there can be no showing of replacement by a younger employee, a plaintiff may nonetheless have been terminated because of his age. *Id.* It would thus have been error to hold that Kotarski could not make a *prima facie* showing solely because he could not show he was replaced by an employee outside the protected class. *Cf. id.* at 97.

But that is not what this court held. The court noted that the only utility of the burden-shifting framework is that it eliminates the most common nondiscriminatory reasons for a plaintiff's discharge; the method has no *per se* legal significance. *See Texas Dept. of Comm'y Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Therefore, a plaintiff need not show the fourth element of a *prima facie* case so long as he comes forward with evidence of some other nexus between the defendant's employment action and age discrimination. For example, a plaintiff could offer statistical evidence of a discriminatory pattern in the work force reductions, or evidence that a defendant's articulated criterion for choosing which employees to lay off was a close proxy for age. *See Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1386–88 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Because Kotarski failed to offer any evidence in lieu of the replacement element of the burden-shifting method, the court properly found Kotarski failed to raise a genuine dispute as to whether he had established a *prima facie* case.

Kotarski argues the court nonetheless committed error because *Stumph* dispenses with the fourth element outright. Admittedly, *Stumph* could be read to suggest as much. *See Stumph*, 770 F.2d at 96–97. But the court declines to read *Stumph* as broadly as Kotarski suggests. That reading would severely undercut the efficacy of the burden-shifting method. Eliminating the replacement element in cases involving work force reductions would mean any protected employee who could show he was performing satisfactorily and was laid off would have a *prima facie* case. Certainly such a limited showing does not eliminate the most common nondiscriminatory reasons for discharge, but the burden-shifting method must do just that to be effective. *See Burdine, supra.* While the method must be applied flexibly, it must not be altered so much that it loses all utility as a reliable method of proof. Providing a *prima facie* case for virtually all protected employees who lose their job as a result of work force reductions goes too far. *Accord Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1220–21 (7th Cir.1991) (ADEA plaintiff in corporate reorganization case had

at 15. The evidence cited tends to show that Kotarski's replacement is not as active in the inspection department as he was, but even if that were true, it does not avail Kotarski. In the first place, a reduction in the duties of the inspection supervisor is not inconsistent with a concurrent consolidation of those duties into the toolroom supervisor position. Second, if nobody currently performs Kotarski's duties, then the duties were eliminated, and Kotarski has absolutely no hope of showing that he was replaced (or a replace-

ment was sought) by someone outside the protected age group.

4. Kotarski did not cite to *Stumph* in his original opposition to summary judgment. Although Kotarski's citation to this case is new, his argument is not. The court reluctantly considers the effect of new authority in this motion for reconsideration because Kotarski's argument amounts to an assertion that the court's holding was a clear error of law.

to show favorable treatment for those outside of class and carried a greater burden of demonstrating pretext).

## III. Proof by Pretext Alone

Kotarski also faults the court for holding that any showing regarding pretext is irrelevant because Kotarski failed to raise a genuine issue of fact on his *prima facie* case. According to Kotarski, if he proves that the employer's proffered explanation is pretextual, the jury may infer discrimination from that proof alone. Kotarski claims *Perfetti v. First Nat. Bank,* 950 F.2d 449 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992), holds just that. But Kotarski's claim is plainly incorrect. Though *Perfetti* addresses the issue of pretext, that decision recognizes that pretext only becomes an issue after a plaintiff makes out a *prima facie* case. *Id.* at 450–51.

In any case, the court also determined that there was no genuine issue of material fact regarding pretext. Binks' evidence demonstrated that Binks was involved in a cost-cutting program, that Kotarski's supervisors felt he was performing poorly, and that Kotarski's position as inspection foreman was eliminated. Each of these is a valid nondiscriminatory reason for discharge. Kotarski claims the evidence suffers from inconsistencies. But it takes contrary evidence, not qualitative criticisms, to create a dispute. Fed.R.Civ.P. 56(e).

## CONCLUSION

Plaintiff's motion to alter or amend judgment is denied.