985 F.2d 364
 61 Fair Empl.Prac.Cas. (BNA) 72, 60 Empl.
Prac. Dec. P 42,041,
61 USLW 2531
 Arthur N. KRISTUFEK, Plaintiff-Appellant,
and
Mary McPherson, Plaintiff/Cross-Appellee,
v.
HUSSMANN FOODSERVICE COMPANY, TOASTMASTER DIVISION,
Defendant-Appellee/Cross-Appellant.
 Nos. 91-3487, 91-3552.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 5, 1992.
Decided Feb. 10, 1993.
Rehearing and Rehearing In Banc
Denied April 29, 1993.
 
 William T. Coleman (argued), Susan M. Langlotz, Edward J. Whalen, Hedberg, Tobin, Flaherty & Whalen, Chicago, IL, for Mary McPherson and Arthur N. Kristufek.
 Michael G. Cleveland (argued), Janet M. Hedrick, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Hussmann Foodservice Co., Toastmaster Div.
 Before COFFEY and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Senior Circuit Judge.
 
 
 1
 The two plaintiffs, Arthur N. Kristufek and Mary McPherson, former employees of defendant Hussmann Foodservice Company, Toastmaster Division, ("Hussmann") in a three-count complaint filed in June 1987 charged defendant with violations under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Kristufek charged in Count I he was terminated because of his age, and in Count II he alleges he was terminated in retaliation for his efforts in opposing the discharge of McPherson for reasons of her age. In Count III McPherson alleges she was discharged for her age.
 
 
 2
 Hussmann filed a motion to dismiss Count II on the basis that Kristufek's retaliation claim was barred by his failure to raise it with the Equal Employment Opportunity Commission ("EEOC"). The district court denied the motion because Kristufek did file an EEOC charge of age discrimination and the retaliation claim was considered "like or reasonably related to" his age discrimination claim.
 
 
 3
 In a jury trial on November 3, 1989 the jury found against Kristufek on Count I, but for him on Count II returning a verdict in the amount of $111,145.00, and for McPherson on Count III returning a verdict of $28,721.00. Because the jury found willfulness, the verdicts for back pay were doubled pursuant to 29 U.S.C. § 626(b). On that same date judgment was entered in behalf of Kristufek for $222,296.00 and in behalf of McPherson for $57,442.00.
 
 
 4
 Following entry of the judgment, the district court, sua sponte, extended the time for filing post-trial motions until February 2, 1990. Within that time Hussmann filed its post-trial motions and plaintiffs filed their petitions for attorney fees. On October 3, 1991 the district court denied one Hussmann motion and sustained the judgment as to McPherson, but granted Hussmann's motion as to Kristufek and set aside the verdict because Kristufek had falsified his employment application.
 
 
 5
 Thus, the first issue Kristufek raises is the jurisdiction of the district court to entertain post-trial motions filed more than ten days after the entry of judgment. Rules 50 and 59 of the Federal Rules of Civil Procedure when read in conjunction with Rule 6(b) prohibit an enlargement of time. The district judge later assumed full responsibility for the unauthorized extension under the rules, and considered he had jurisdiction of the motions because he had inadvertently misled counsel.[1] We need not resolve jurisdiction on that basis as the original judgment entered on November 3, 1989 was not final.
 
 
 6
 The district court during trial had reserved to itself one of the principal issues to be decided as a matter of law. That issue was whether or not Kristufek should be denied recovery because he had falsified his resume used in obtaining his employment with Hussmann. In its trial brief and at other times during trial, Hussmann had raised that falsification as a bar to recovery. The district court on several occasions plainly reserved that issue to itself. (Tr. at 96-97, 103, October 10, 1989; Tr. at 308, November 1, 1989; Tr. at 495, November 2, 1989). That issue reservation apparently went unnoticed by all parties and was not resolved until the district court subsequently allowed Hussmann's post-trial motion on October 3, 1991 which again raised that issue. It was an important issue, and one considered decisive by the district court. It is axiomatic that the case must be over with no remaining issues, except for attorney fees and expenses, before the judgment becomes final and appealable. Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership, 845 F.2d 674, 676 (7th Cir.1988). Thus the time for filing post-trial motions had not begun to run when what appeared to be a final judgment, but was not, was entered on November 3, 1989. The post-trial motions were therefore timely and when ruled on concluded the case. The notices of appeal to this court were likewise timely. The separate appeals have been consolidated. The merits of the issues are therefore before us.
 
 Factual Background
 
 7
 McPherson who had been hired by the company in 1946 as a typist was fifty-nine years old when terminated on June 20, 1986 for cause Hussmann claimed, but because of her age she claimed, and the jury agreed with her. At the time of termination she had risen to become executive secretary to David Mosteller who had joined Hussmann in 1984 as its president. Kristufek was hired in 1981 by Hussmann as Director of Employee and Community Relations. In his employment interview Kristufek stated he had a Bachelor of Science degree in business administration received from Drake University, Des Moines, Iowa, in 1954, and further that he had taken graduate courses at Northwestern University. Those education claims, apparently never verified by Hussmann, were totally false. Their falsity was not discovered by Hussmann until November 17, 1987 during the course of depositions in this case when Kristufek admitted the falsity. The truth was Kristufek had attended Drake University for about a year, but did not graduate, and had taken courses at Northwestern University, but not graduate level courses. When terminated on August 15, 1986 Kristufek was fifty-seven years of age. Hussmann claimed that Kristufek was terminated as a result of a department reorganization to reduce costs, the principal feature of which was that Kristufek's job was abolished. It was not claimed by Hussmann that Kristufek was fired for cause. Kristufek claimed before the EEOC that he was discharged for age, but in his complaint in this case he added the claim that his discharge was in retaliation for his support of McPherson in an effort to prevent her discharge. The jury resolved this latter issue in his favor. McPherson's successful claim of age discrimination and Kristufek's successful claim of retaliatory discharge are factually related as we shall see.
 
 
 8
 Mosteller, after he joined the company as its president, was not satisfied with McPherson's job performance although she had received merit increases during her entire employment. In his view she was timid and diffident, too slow, and required excessive supervision. When the work pressure mounted, McPherson became flustered. She resisted using word processing equipment. Further, she did not set up meetings and luncheons for Mosteller as requested, but delegated that responsibility to another secretary. Mosteller, the only one to give McPherson a poor rating, advised her of these perceived shortcomings, but her work did not improve. She was warned of possible termination, but her work only deteriorated under the pressure, and she was subsequently terminated. McPherson was not offered the chance as a senior employee to transfer to another company job. Mosteller's attitude was clear as he commented "he didn't want to see her face in the company any more."
 
 
 9
 On that record, viewed from Hussmann's perspective, there may have been adequate reasons for McPherson's discharge unrelated to age discrimination. Kristufek's testimony, however, added a new dimension which apparently persuaded the jury that the real reason for the discharge of McPherson was in fact her age, and that Kristufek's discharge was not due to the claimed reorganization, but was in retaliation for Kristufek's support of McPherson prior to her discharge.[2]
 
 
 10
 Part of Kristufek's job as personnel manager was to consult with the company president about personnel matters. Kristufek's testimony chronicled the discussions he had with Mosteller in behalf of McPherson prior to her discharge. Kristufek claimed on several occasions to have advised Mosteller that to fire McPherson under the circumstances would violate the Age Discrimination Act. On one of those occasions Mosteller reacted by slamming his pencil down and saying he did not want to hear anything about "bureaucratic paperwork talk." Mosteller is quoted as telling Kristufek that "I'm telling you what I want done and I want it done. This is a priority assignment." What he wanted done was to fire McPherson and replace her with a young secretary. Kristufek testified that later he again advised Mosteller that they would be violating the Age Discrimination Act, and that McPherson would have a good case. There appears to have been no inquiry by Mosteller about the possible application of the Act, which he dismissed as the work of government bureaucrats to keep a company from making money, to McPherson. He fired McPherson on June 20, 1986 and assigned Kristufek the job of finding as her replacement a "sharp" or "young" secretary.
 
 
 11
 Kristufek collected many resumes of replacement candidates for consideration by Mosteller. Mosteller would dismiss some prospects who had been in the workplace for a long time with a "no" or would inquire when the prospect had gotten out of school. Kristufek asked why the prospects he had offered were unacceptable. Mosteller's answer was that they were all women in their forties or fifties. In one instance Kristufek suggested a prospect who held a Master's degree from the University of Michigan. Mosteller asked what she looked like and how old she was. When Kristufek speculated the prospect was "around 50" and had gray hair on the sides and was a little stout, Mosteller declined to interview her and told Kristufek not to waste his time. A thirty-nine-year-old replacement was hired.
 
 
 12
 Kristufek testified that from then on his relationship with Mosteller deteriorated. Informal conversations and lunches with Mosteller became minimal whereas before his opposition to the firing of McPherson they had a closer personal relationship. On August 15, 1986 Kristufek was also terminated, not for cause, Mosteller testified, explaining they had just reorganized his job away.
 
 The Legal Issues
 I.
 
 13
 We agree with the district judge although we view it as a close call that based on these particular facts Kristufek's EEOC filing limited to age discrimination without mention of his retaliatory allegation as later set out in his complaint was a sufficient basis for jurisdiction over Counts I and II. The district judge denied the defendant's motion to dismiss the Count II retaliatory charge on the basis that it was sufficiently "like or related" to Kristufek's claim of age discrimination which was filed with the EEOC. It is necessary to briefly examine a few of the cases in this circuit on this issue.
 
 
 14
 Our view in this particular case is not a new view of the law. In Jenkins v. Blue Cross Mutual Hospital Insurance, Inc., 538 F.2d 164 (7th Cir.), cert. denied, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), after a survey of then available precedent, this court concluded that a complaint may properly encompass any discrimination like or reasonably related and growing out of charges filed with the EEOC. What boxes, for instance, are checked on the EEOC form do not necessarily control the scope of a subsequent civil complaint. As in Jenkins, both of Kristufek's charges arise from a common factual basis. Id. at 169. Furthermore, the charges of McPherson and Kristufek support each other. McPherson was fifty-nine when fired and Kristufek was fifty-seven, approximately the same age. If McPherson, in Kristufek's view, was being fired because of her age then being only two years younger than he, that could reasonably give Kristufek reason to believe that he also was a potential target. After Kristufek argued McPherson's case before Mosteller on the basis of age discrimination, he suffered retaliation. Kristufek testified that to mention age discrimination to Mosteller only infuriated him. These charges, his and hers, were all related in time and substance and both focused on Mosteller's conduct as president of Hussmann. Mosteller, the company president, McPherson, his executive secretary, and Kristufek, the personnel officer of Hussmann, were the people directly involved in the charges, all part of the company's inner circle. That should have been enough even in a perfunctory investigation of the charges to have revealed the retaliation aspect as part of the whole. Kristufek's retaliation charge grew out of McPherson's age problem. Nothing could be gained in this factual context by applying the "reasonably related and growing out of" rule in a strict and technical manner. In Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir.1985), we decided the requirement that the complaint be encompassed within the corresponding EEOC charge was more in the nature of a condition precedent than in the stricter matter of subject matter jurisdiction. We found error when the Babrocky district court dismissed the discrimination complaint based on an "inexplicably crabbed interpretation" of this court's "strong language" in Jenkins. Id. at 864. In Caldwell v. National Association of Home Builders, 771 F.2d 1051, 1054 (7th Cir.1985), this court reaffirmed its holding in Jenkins that EEOC charges are to be read broadly.
 
 
 15
 Hussmann understandably relies upon Steffen v. Meridian Life Insurance Co., 859 F.2d 534 (7th Cir.1988), cert. denied, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989), in which this court, following the rule of Jenkins, nevertheless found that the plaintiff's retaliation claims alleged in his complaint did not fall within the EEOC charge of age discrimination. Id. at 544. This court there affirmed summary judgment on behalf of the employer. Many of these cases are narrowly based on their facts and not easy to reconcile. Steffen is more in the mold of our recent case O'Rourke v. Continental Casualty Co., 983 F.2d 94 (7th Cir.1993). But in the present case, the factual relationship of the age and discrimination charges of the parties is so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act. Hussmann had formal notice of a problem though not complete notice, but that should have been enough. Hussmann has not complained that it was in fact prejudiced by the limited EEOC charge. We agree with Judge Holderman and find that we have jurisdiction over the retaliatory charge.
 
 II.
 
 16
 Kristufek also faces the problem of his admitted falsified educational qualifications submitted at the time he was hired by Hussmann. The district court agreed with Hussmann that Kristufek's fraudulent conduct barred him from any recovery and entered judgment notwithstanding the verdict ("JNOV") against Kristufek. There is no doubt that Kristufek's deception reasonably suggests that that result is deserved, but we cannot apply discrimination law so forthrightly, regardless of the admitted fraud.[3]
 
 
 17
 Hussmann, in supporting the district court's JNOV relies primarily on our decision in Smith v. General Scanning, Inc., 876 F.2d 1315 (7th Cir.1989), which it views as factually analogous. Smith, however, makes it clear, as do we, that the only issue is the lawfulness of the termination for the reasons given. Id. at 1319. The resume fraud in that case was likewise found to have nothing to do with termination. That fraud came to light only after the termination and after suit was filed as in the present case. However, in Smith there were other legitimate non-pretextual business reasons for the firing unrelated to retaliation unlike here. A discriminatory firing must be decided solely with respect to the known circumstances leading to the discharge. Id. The deterring statutory penalty is for retaliatory firing, the character of which is not changed by some after discovered alternate reason for discharge which might otherwise have been used, but was not. The after discovered alternate reason comes too late. Id. That remains our view of the law.
 
 
 18
 Hussmann appears to have had a company policy that employees were subject to discharge for misrepresenting their job qualifications, but not that such employees would in fact be fired. The principal evidence of the company policy appears on the employment application form which warns that "any misstatement or omissions of material facts ... may be cause for immediate dismissal." "May be" is not "will be" and is not enough to avoid the proven charge of a retaliatory firing.
 
 
 19
 The matter of Kristufek's damages is another matter. Smith, though in dicta, considers the resulting matter of reinstatement and back pay liability if discrimination is found. Id. at 1319 n. 2. But reinstatement is not an issue here, only back pay. Hussmann argues that Kristufek should receive no back pay even for time prior to the discovery of his fraud, citing Summers v. State Farm Mutual Automobile Insurance Co., 864 F.2d 700 (10th Cir.1988), which was cited in Smith. The Summers court drew a distinction between "cause" and "injury" and held that after-acquired evidence of fraud could not be cause for termination, but would preclude the grant of any present relief to the discharged employee. There are relevant factual differences, however, between Summers and this case. In Summers many of the falsifications admitted by the employee were known to the employer before discharge. The employee was repeatedly warned that continued falsifications could result in dismissal, but falsifications continued resulting in additional warnings and a probationary status for two weeks without pay. The employee was later fired for reasons other than the falsifications, and then sued the employer. While preparing for trial the employer discovered additional falsifications not known at the time of discharge. The court permitted this additional evidence to be considered along with the known falsifications prior to discharge, and the employee was denied any recovery. It was apparent after a specific warning that Summers would be fired for falsification, but he kept it up. The court found in those circumstances that the employer had carried its burden that the employees would have been discharged anyway had the employer known of the continuing extensive falsifications.
 
 
 20
 The jury came to a different conclusion in this case and awarded Kristufek damages finding in special interrogatories that his discharge was retaliatory and wilful. Hussmann argued to the jury that Kristufek had falsified his resume about his education to obtain and keep his job. Kristufek testified that he was just marketing himself as it would make him look better. The jury agreed with Kristufek that retaliation was a determining factor in his discharge. We cannot say the evidence was insufficient. Jardien v. Winston Network, Inc., 888 F.2d 1151, 1154 (7th Cir.1989).
 
 
 21
 Kristufek's one time falsification was not known until after discharge so this could not have been considered as having any influence on his discharge. Kristufek's falsifications were not of a critical nature such as in the hypothetical used in Summers, 864 F.2d at 708, in which a doctor was fired by a company for a discriminatory reason. Then it was discovered the employee was not in fact a doctor, an obviously critical job requirement. It cannot be seen from the present record that a degree in business administration and additional related graduate courses, though likely desirable, were job prerequisites. Those qualifications were not so critical as to cancel out the statutory penalty for a discriminatory firing. Kristufek functioned well without those degrees. He received merit increases and bonuses in the years he worked for Hussmann, though there was some evidence, though not claimed as a basis for discharge, that Mosteller was not fully satisfied with Kristufek particularly after he championed the cause of McPherson. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Hussmann had its chance but failed before the jury in its proof by a preponderance of the evidence to show that it would have fired Kristufek even in the absence of the protected conduct. We cannot retry that factual issue here. In spite of Kristufek's lack of a business degree, Mosteller would have been well advised to have taken Kristufek's advice seriously about the legal risk of firing an employee for reasons of age in order to hire a "sharp" and "young" secretary.
 
 
 22
 In these falsification circumstances, though understandable, we believe it was error to grant Hussmann JNOV. It is retaliation which the law punishes, and the jury from sufficient evidence found wilful retaliation; the reasons advanced by Hussmann for Kristufek's discharge therefore were found to be pretextual. The jury disposed of the false resume issue. We see no objection to any applicable jury instructions. For a noncritical, non-fundamental job requirement without adequate showing that Kristufek would have been fired, not just that he might have been, it was error to decide it as a matter of law and set aside the jury verdict.[4]
 
 III.
 
 23
 The issues of damages and attorney fees allowable to prevailing parties under 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b) remain as to both McPherson and Kristufek.
 
 
 24
 Hussmann argues that the damage award to McPherson bears no rational relation to the evidence, and further that the verdict was against the great weight of the evidence. Hussmann seeks a remittitur or a new trial. It is claimed the jury simply ignored the instructions although no fault was found with those instructions. The jury, it is further claimed, failed to subtract claimed setoffs from her back pay and did not consider that she failed to mitigate her damages. The jury was careful and did find she did not mitigate her damages for periods in 1986, 1987, and 1988, and adjusted damages accordingly. There is no complaint about the pertinent damages instruction.
 
 
 25
 The jury's calculations are findings which we will not disturb unless clearly erroneous and without substantial supporting evidence. We cannot find that to be true except in one detail. Hussmann claims that any attorney fees allowed to McPherson should be reduced by $2,623.18, an amount awarded to her for costs. McPherson disputes this reduction. The judgment bears the notation that "each party bear its own costs." There is a dispute about distinguishing a "cost" item under Rule 54(d), Fed.R.Civ.P. and 28 U.S.C. § 1920 and an "expense" item as allowed under ADEA. We will leave it to the district court on remand to determine the meaning of its own docket entry and to make any necessary adjustments. McPherson is entitled to have us view the evidence in her favor as a prevailing party along with all reasonable inferences. Jardien v. Winston Network, Inc., 888 F.2d 1151 (7th Cir.1989). The judgment in favor of McPherson is in all other respects affirmed.
 
 
 26
 The judgment in favor of Kristufek, in keeping with Smith v. General Scanning, Inc., 876 F.2d 1315, 1319 n. 2, must be modified downward. We see nothing to be gained by further penalizing Hussmann after this resume fraud came to light. This limited downward modification is, however, opposed by Hussmann as it prefers of course to avoid all back pay and any allowance for attorney fees. A remittitur is ordered in an appropriate amount to accomplish that reduction in the back pay award for time after the fraud was discovered. We remand the issue to Judge Holderman for a mathematical calculation of the amount of the remittitur to be based, if possible, on the evidence already in the record, with a corresponding reduction of the wilfulness addition. Under the statute and the cases, we see nothing more that can be done for Hussmann which would not greatly weaken the statutory protections from retaliation.
 
 
 27
 The judgment in favor of McPherson is affirmed except as above mentioned in relation to the docket entry, which shall be resolved on remand. The JNOV in favor of Hussmann is reversed, and the jury's verdict is reinstated as to Kristufek, but subject on remand to reduction by the mathematical computations necessary to determine and deduct a share of the damages and any attorney fees for the time after the discovery of the falsification. If this damage calculation by the district judge proves not to be reasonably possible then a new trial shall be granted only on the matter of Kristufek's damages.
 
 
 28
 In this court the parties shall bear their own costs.
 
 
 29
 The case is remanded for further proceedings in keeping with this opinion.
 
 
 
 [1]
 See, e.g., Winston Network, Inc. v. Indiana Harbor Belt R.R. Co., 944 F.2d 1351, 1362 (7th Cir.1991); United States v. Dumont, 936 F.2d 292, 295 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 399, 116 L.Ed.2d 349 (1991); Varhol v. National R.R. Passenger Corp., 909 F.2d 1557 (7th Cir.1990) (en banc); Green v. Bisby, 869 F.2d 1070 (7th Cir.1989); Bailey v. Sharp, 782 F.2d 1366 (7th Cir.1986)
 
 
 [2]
 Mosteller also found deficiencies in Kristufek's work performance in several respects, but Kristufek received merit increases and bonuses each year he worked for defendant. Since the defendant did not claim at trial that Kristufek's discharge was for cause we need not examine these complaints
 
 
 [3]
 It appears that after his termination Kristufek approached McPherson and offered to assist her with a lawsuit against Hussmann by providing testimony, research and other assistance for ten percent of any damages she might recover. That objectionable agreement was terminated when discovered by Hussmann after this lawsuit began
 
 
 [4]
 The record reveals another instance of Kristufek's poor judgment at the least. After trial, but while post-trial motions were pending, Kristufek sent Judge Holderman a Christmas card with a note thanking the judge for his fairness in presiding over his trial. Kristufek does not understand that fairness, a part of a judge's work, comes naturally to Judge Holderman and other district judges