Patricia J. WALTERS, Appellant,

v.

UNITED STATES GYPSUM COMPANY, Appellee.

No. 94–752.

Supreme Court of Iowa.

Sept. 20, 1995.

Angela A. Swanson of Morain, Burlingame, Pugh & Koop, West Des Moines, for appellant.

Stuart J. Cochrane of Johnson, Erb, Bice & Carlson, P.C., Fort Dodge, and Donald J. McNeil and Janet M. Kyte of Keck, Mahin & Cate, Chicago, Illinois, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

The trial court resolved this retaliatory discharge suit on the basis of the "after acquired evidence" doctrine. Under this doctrine a wrongful discharge can be justified, at least to some extent, on the basis of later-discovered evidence unknown at the time that would have been a valid reason for the firing. In applying the rule, the trial court determined this plaintiff could have no recovery. We think the trial court was correct in approving the rule, but applied it too broadly. We adopt and apply for state purposes the after-acquired-evidence doctrine as promulgated for federal courts by the United States Supreme Court. Under the doctrine, recovery may be had, but only for wages up

to the discovery of the after-acquired evidence. We reverse and remand.

The plaintiff Patricia Walters claims she was discharged from her employment because she filed a civil rights complaint against her employer, defendant United States Gypsum Co. (the company). The civil rights complaint stemmed from an involuntary leave the company forced Patricia to take pending an evaluation of her fitness to work after an incident of severe personal trauma.

Patricia worked as an operator at the company's "joint treatment department." Her responsibilities included driving a fork truck and operating other machinery. Beginning in April 1991, after having witnessed a murder, Patricia began exhibiting effects of mental trauma. The company placed her on involuntary unpaid medical leave, and said she would be required to obtain a release from a mental health professional as a condition to return to work. Patricia obtained such a release, although there is dispute as to how much Patricia disclosed to her counselor regarding her mental state.

When Patricia thereafter attempted to return to work the personnel manager refused to accept the release. Patricia says the personnel manager told her the only way she would be paid for the time missed was if she signed papers admitting she was mentally ill. After Patricia's attorney intervened, the company agreed she could return to work by obtaining a release, not from a mental health counselor, but from a medical doctor. Patricia subsequently obtained the release and was allowed to return to work.

She then filed the complaint with the Iowa civil rights commission alleging she was discriminated against due to the company's perception that she suffered a mental health disability.[1] *See* Iowa Code ch. 216 (1993). The company fired Patricia eighteen days after the complaint was filed. The stated reasons for the firing were poor job performance, excessive absenteeism, disruption of operations, and abusive treatment of other employees.

After Patricia brought this action for retaliatory discharge the trial court granted summary judgment in favor of the company on the basis of the after-acquired-evidence doctrine. The matter is before us on Patricia's appeal from that judgment.

I. Under the after-acquired-evidence doctrine, as applied by the trial court, if an employer illegally fires an employee and later discovers there were legitimate reasons for doing so, the employer is insulated from liability. Patricia admitted in deposition that on occasion she came to work "under the influence" of beer and marijuana. This was in violation of written company policy and cause for "automatic termination," although the company admits the penalty is discretionary and that the plant manager is the "decisionmaker in all terminations."

The after-acquired-evidence doctrine as applied in termination cases has its origin in *Summers v. State Farm Mutual Automobile Insurance Co.*, 864 F.2d 700 (10th Cir.1988). *Summers* involved a suit by an insurance company's field representative alleging age discrimination, 29 U.S.C. §§ 621–634 (1967 as amended), and religious discrimination, 42 U.S.C. §§ 2000e–2(a), 3(a) (1964 as amended). Summers had a satisfactory seventeen-year employment record before it was discovered he had falsified company records to validate some claims the company had paid to insureds. Influenced by the fact that Summers did not financially profit from the falsification, State Farm elected to place him on probation rather than fire him. He was, however, warned that any subsequent violations would result in dismissal. Two years later the company fired Summers, stating it did so due to his poor attitude, inability to get along with fellow employees and customers, and similar problems dealing with the public and coworkers. Summers then filed suit alleging religious and age discrimination.

---

1. Patricia asserted several claims in her complaint with the civil rights commission: (1) discrimination based on disability; (2) intentional infliction of emotional distress; (3) wrongful discharge; (4) breach of implied covenant of good faith and fair dealings; and (5) retaliatory discharge. The first four of these claims were also dismissed but those dismissals were not preserved for our review.

Four years later, through discovery and preparation for trial, State Farm uncovered more than 150 instances in which Summers had falsified claims, eighteen of which occurred after he had returned to work on probation. On the strength of this evidence State Farm was granted a motion for summary judgment. In affirming, the court of appeals adopted what has become known as the after-acquired-evidence doctrine. 864 F.2d at 708–09. The doctrine permits an employer to use after-acquired evidence as a complete bar to recovery by a former employee alleging discrimination where the employer can show it would have fired the employee on the basis of the evidence.

The court's rationale for adopting this rule was twofold. It first relied on the mixed-motive analysis fashioned by the United States Supreme Court in *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Summers*, 864 F.2d at 705. In *Mount Healthy* the supreme court considered a firing decision based on two motives—one lawful, the other unlawful. The supreme court held that if the lawful reason alone would have sufficed to justify the firing, then the employee could not prevail in a suit against the employer. *Mount Healthy*, 429 U.S. at 284–87, 97 S.Ct. at 574–76, 50 L.Ed.2d at 482–84. Extending this rationale, the court of appeals noted:

> While such after-acquired evidence cannot be said to have been a "cause" for Summers' discharge ... it is relevant to Summers' claim of "injury" and does itself preclude the grant of any present relief or remedy to Summers.

*Summers*, 864 F.2d at 708.

Second, while not expressly labeling it as such, the court invoked the "clean-hands doctrine":

> The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor."

*Id.* The court concluded that Summers, like the masquerading doctor, was entitled to no relief. *Id.*

*Summers* precipitated a split among the circuits as to the validity of after-acquired evidence in employment discrimination cases. *Compare Welch v. Liberty Machine Works, Inc.*, 23 F.3d 1403 (8th Cir.1994) (barring any recovery); *O'Driscoll v. Hercules, Inc.*, 12 F.3d 176 (10th Cir.1994) (same); *Washington v. Lake County*, 969 F.2d 250 (7th Cir.1992) (same); *Johnson v. Honeywell Info. Systems, Inc.*, 955 F.2d 409 (6th Cir.1992) (same); *and Smallwood v. United Air Lines, Inc.*, 728 F.2d 614 (4th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984) (same), *with Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221 (3d Cir.1994) (allowing recovery, but limited to back pay until time of discovery of the legitimate cause of dismissal); *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.*, 985 F.2d 364 (7th Cir.1993) (same); *and Wallace v. Dunn Constr. Co.*, 968 F.2d 1174 (11th Cir.1992) (same), vacated pending rehearing en banc, 32 F.3d 1489 (1994). The supreme court resolved this issue in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

The facts in *McKennon* were typical of an after-acquired evidence dispute: a discharged employee sued her employer for unlawful discharge claiming age discrimination, and the employer subsequently discovered the employee had removed confidential records from the office. The court's analysis proceeded in several steps. It first noted that the Americans with disabilities act (ADA) was part of the broader statutory scheme of title VII of the civil rights act of 1964, 42 U.S.C. § 2000e *et seq.* (1988 ed. & Supp. V) (prohibiting discrimination based on race, color, sex, national origin, and religion); the Americans with disabilities act of 1990, 42 U.S.C. § 12101 *et seq.* (1988 ed. and Supp. V) (prohibiting discrimination against persons with disabilities); the national labor relations act, 29 U.S.C. § 158(a) (protecting union activities); and the equal pay act of 1963, 29 U.S.C. § 206(d) (prohibiting sex discrimination).

The court next identified two goals of the statute: (1) deterrence; and (2) compensation for injuries caused by the prohibited

discrimination. Observing that the act created a cause of action for injured employees, it was found that "[t]he private litigant who seeks redress for his or her injuries vindicates both the deterrence and compensation objectives of the ADEA." 513 U.S. at ——, 115 S.Ct. at 884, 130 L.Ed.2d at 861. The court thus concluded that allowing the after-acquired evidence to bar all relief would interfere with the "private attorney general" scheme of enforcement envisioned by the act. 513 U.S. at ——, 115 S.Ct. at 884–85, 130 L.Ed.2d at 861.

With this in mind the court criticized *Summers* for its reliance on *Mount Healthy*, explaining:

> [*Mount Healthy*] was controlled by the difficulty, and what we thought was the lack of necessity, of disentangling the proper motive from the improper one where both played a part in the termination and the former motive would suffice to sustain the employer's action.
>
> That is not the problem confronted here. As we have said, the case comes to us on the express assumption that an unlawful motive was the sole basis for the firing. McKennon's misconduct was not discovered until after she had been fired. The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason.

*McKennon*, 513 U.S. at ——, 115 S.Ct. at 885, 130 L.Ed.2d at 862. Thus the court concluded mixed-motive cases to be inapposite. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989)) (plurality opinion) (employer's legitimate reason for discharge in mixed-motive case will not suffice "if that reason did not motivate it at the time of the decision").

Finally the court examined what effect the clean-hands doctrine should have in after-acquired evidence situations. *McKennon*, 513 U.S. at ——, 115 S.Ct. at 885, 130 L.Ed.2d at 863. It was found that while unclean hands traditionally bar a suitor from invoking the aid of a court in equity, an exception exists where a private suit furthers an important public purpose. But the court did not find the employee's misconduct entirely irrelevant. Stressing that the ADEA was not a general regulation of the work place, but rather a law which prohibited discrimination, the court stated the act did not constrain employers from exercising discretion in their personnel decisions. 513 U.S. at ——, 115 S.Ct. at 886, 130 L.Ed.2d at 863. The court therefore held that as a general rule neither reinstatement nor front pay was an appropriate remedy in an after-acquired-evidence case. McKennon's remedy was thus limited to back pay calculated from the date of the unlawful discharge to the date the new information was discovered. *Id.*

■ We think *McKennon* strikes the correct balance in furthering the policies underlying retaliatory discharge recoveries and at the same time yielding to practical reality. On the one hand it is the employer's improper motive for the firing, not the employee's right to the position, that energizes retaliatory discharge recoveries. On the other hand it is obvious that the employment would end at the time the employer realizes the existence of valid reasons for the discharge. We therefore hold that, when an employer seeks to rely on after-acquired evidence of an employee's wrongdoing in a discrimination suit, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known about it at the time of the discharge. Once this has been established an employee's recovery will be limited to back pay calculated from the date of the unlawful discharge to the date that the after-acquired evidence was discovered. Adopting such an approach is the best method for vindicating the rights of both the employer and the employee, as well as furthering public policy.

The court should not have applied the doctrine as a bar to Patricia's right to any recovery. The doctrine, where applicable, works only so as to limit the recovery. The case must be remanded for further proceedings accordingly.

■ II. The trial court based its ruling in part on a second ground, noting that the company "provided uncontroverted evidence

**712**

that [Patricia] was not terminated in retaliation for filing the discrimination claim." The court then quoted the following rule:

[T]he mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim.

*Hulme v. Barrett,* 480 N.W.2d 40, 43 (Iowa 1992). The trial court believed that Patricia's claim stood only on her bare assertion that she was fired as a result of filing her civil rights claim. This assertion, the trial court noted, was contested by defense evidence that she was fired for poor job performance, attendance problems, and conflicts with her coemployees.

Patricia however points out that she was never disciplined for any of these reasons and also that no employee had ever been fired by the company for use of drugs or alcohol. We think Patricia's claims and showing, which will no doubt be hotly disputed during a full trial, rendered the matter inappropriate for summary judgment. The trial court erred in its reliance on the second ground.

**REVERSED AND REMANDED.**