John P. NOREUIL, Plaintiff–Appellant,

v.

**PEABODY COAL COMPANY,**
**Defendant–Appellee.**

**No. 95–3199.**

United States Court of Appeals,
Seventh Circuit.

Argued March 21, 1996.

Decided Sept. 16, 1996.

Timothy J. Reardon (argued), Athas, Kowal, Bridge & Deane, Springfield, IL, for plaintiff–appellant.

William A. Schmitt (argued), and Karen A. Carr, Thompson & Mitchell, Belleville, IL, for defendant–appellee.

Before WOOD, Jr., KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

When John Noreuil sought to return to work at Peabody Coal Company after a long recovery period from a work-related injury, he was informed that his position had been eliminated, and thus he was forced to retire. Soon thereafter, he filed an administrative charge alleging that his forced retirement had been retaliation for an earlier, unrelated age discrimination claim that he had filed against Peabody. When this charge was denied, Noreuil filed a civil action in district court, claiming that the forced retirement had, in fact, been age discrimination. Finding that Noreuil's suit for age discrimination was procedurally barred because he had failed to file a prior administrative charge encompassing his claims, the district court granted summary judgment in favor of Peabody, and we affirm.

## I. HISTORY

Noreuil, born March 24, 1930, had been working at Peabody for twenty-two years when he injured his shoulder while on the job in February 1991. The injury required Noreuil to undergo two surgeries and to be absent from work for an extended period of time. Pursuant to Peabody's policy concerning injury-related absences, Noreuil remained on active status and received full salary continuance for the first six months of his absence. After six months, Noreuil was placed on inactive status, and although he no longer received his full salary, he became eligible for, and received, long-term disability benefits. In March 1992, while Noreuil was still absent from work, Peabody offered him early retirement, which he refused because he expressed a desire to work up until age sixty-five. But unfortunately for Noreuil, his position (floating foreman) was eliminated due to a reduction in force while he was absent from work during his recovery period. Under Peabody's return-to-work policy, employees on inactive status may only return to active status if there is an opening available; inactive employees are not guaranteed that a position will be open when they are physically capable of resuming work. Thus, when his doctor certified him able to return to work on July 20, 1992, Noreuil was informed by Peabody that there was no position available to accommodate him, and he was essentially forced to retire on July 21, 1992.

During June 1991, while he had still been an active employee of Peabody, Noreuil filed an administrative charge of age discrimination with the Illinois Department of Human Rights (which subsequently transferred the charge to the Equal Employment Opportunity Commission), claiming that he had been forced to change shifts, had been verbally harassed, and had received unfavorable performance evaluations because of his age. On July 28, 1992, prior to the EEOC's determination of this first charge and one week after his leaving Peabody's employ, Noreuil filed a second charge with the IDHR, alleging that Peabody had forced him to retire in retaliation for his filing the June 1991 administrative charge.

On September 30, 1992, the EEOC issued a right-to-sue letter concerning Noreuil's first charge, in which it explained that its investigation had uncovered no evidence to support Noreuil's claim of age discrimination. On the other hand, during its investigation of Noreuil's claim, the EEOC had found evidence that Peabody's Fair Treatment Review Procedure—the mechanism through which Peabody employees may air work-related concerns and grievances—is retaliatory because the procedure is unavailable to those employees who have filed administrative charges with the EEOC or a state agency.[1] After receiving the right-to-sue letter, Noreuil declined to file an age discrimination suit within the ninety-day limitation period.

On September 17, 1993, the IDHR issued a notice of dismissal announcing that it had found insufficient evidence to support Noreuil's claim that he was discharged in retaliation for filing an administrative claim.[2] Noreuil appealed the decision to the Illinois Human Rights Commission. On his appeal, Noreuil argued that his charge of retaliation should also include a claim that his forced retirement had been discrimination on the basis of age, but the IHRC rejected this argument, stating: "Complainant's allegation in his Request for Review that he was discharged because of his age does not support his charge in the case at bar. Complainant's

1. The propriety of Peabody's Fair Treatment Review Procedure is the subject of a separate EEOC enforcement action, and Noreuil has at no time asserted in an administrative charge or in the district court that the review procedure worked any discrimination against him. Although Noreuil's complaint mentions in its recitation of facts the EEOC's determination concerning the Fair Treatment Review Procedure, the complaint charges only that Noreuil was discharged, not excluded from review, and that the discharge was a result of discrimination on the basis of age, not retaliation for filing a charge.

2. Note that this conclusion is not inconsistent with the EEOC's determination that Peabody's Fair Treatment Review Procedure is retaliatory. The retaliation claimed by the EEOC (exclusion from the review mechanism for filing a charge) is markedly different from the retaliation claimed by Noreuil in his second administrative charge (forced retirement for filing a charge).

charge alleges only retaliation for filing a previous charge."

On April 19, 1994, Noreuil filed an action in the Central District of Illinois, alleging that his forced retirement had violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* The complaint specifically targets as discriminatory Peabody's salary continuance and return-to-work policies because under these policies inactive employees can only return to work if there is an available position, without regard to the inactive employee's past performance, seniority, or age. The complaint asserts that this failure to affirmatively consider age in the return-to-work decision somehow deprives those over forty of the same opportunities available to younger employees, and it concludes:

> As a consequence of the foregoing, the Company's program has produced both a disparate adverse treatment and a disparate adverse impact upon employees who are at least 40 years of age in that the effect of the Company's policies and practices in this regard is to cause directly and indirectly the disproportionate elimination of substantial numbers of employees who are at least age 40, such as the Plaintiff.

Peabody filed a motion for summary judgment on May 22, 1995, arguing: (1) that insofar as claims in the complaint were based on allegations in Noreuil's June 1991 administrative charge, they were time barred because the complaint was not filed within ninety days of the EEOC's adverse determination of that charge; (2) that all other claims in the complaint were procedurally barred because Noreuil had not raised them in a timely administrative charge; and (3) that even if the claims were not barred, Noreuil could not adduce sufficient evidence to support either a disparate treatment or a disparate impact theory of discrimination.

In his response to Peabody's summary judgment motion, Noreuil made several concessions, which significantly narrowed the issues before the district court. First, Noreuil agreed with Peabody's first argument that any claims based on his June 1991 charge of age discrimination would be time barred because the suit was not filed within ninety days of the EEOC's issuing a right-to-sue letter for that charge, *see* 29 U.S.C. § 626(e), and he accordingly asserted that his complaint did not seek to raise any claims of age discrimination based on his first administrative filing. Second, Noreuil admitted it was "clear" that his "Second Charge filed July 28th, 1992, was specifically limited to a claim of 'retaliation for the filing of a previous charge....'" Finally, Noreuil discarded the disparate treatment portion of his complaint, stating:

> Defendant in its Brief goes to great lengths to justify its salary continuation program and its policy that an employee on inactive status is not guaranteed a job would be available to him when he tried to return to work. Plaintiff readily admits that there is nothing about the salary continuation program which is age discriminatory on its face, or that the salary continuation program is even age based.

Instead, citing *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); and *Hiatt v. Union Pacific R. Co.*, 859 F.Supp. 1416, (D.Wyo.1994), affirmed, 65 F.3d 838 (10th Cir.1995), Noreuil chose to rely solely on a theory of disparate impact—i.e., his claim that although neutral on its face, Peabody's salary continuance and return-to-work policies together have a disproportionately negative impact on employees over age forty. Thus, the issues before the district court were (1) whether, under the circumstances in this case, a charge that expressly alleged only retaliation was a sufficient administrative predicate to a disparate impact suit for age discrimination, and (2) if it was, whether Peabody was entitled to summary judgment on Noreuil's disparate impact claim. Reaching only the first issue and finding that Noreuil's claims of age discrimination in his complaint were barred because of his failure to first file an administrative charge encompassing those claims, the district court granted summary judgment in favor of Peabody, and Noreuil appeals.

## II. ANALYSIS

We exercise plenary review over a district court's grant of summary judgment,

drawing our own conclusions of law and fact from the record before us. *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Under FED. R. CIV. P. 56(c), summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law."

In this case, Noreuil has conceded that any claims based on his first administrative filing would be time barred and that his second administrative filing was specifically limited to the claim that he was discharged in retaliation for filing the first charge. Thus, the district court's decision turned upon one issue of law: whether Noreuil's administrative charge alleging only retaliation was a sufficient administrative precursor to his disparate impact claim of age discrimination in federal court.

 The ADEA instructs that a plaintiff may not commence an individual civil action alleging an ADEA violation until sixty days after the plaintiff has filed an administrative charge. 29 U.S.C. § 626. Under the "scope of the charge" doctrine, ADEA claims in such a civil action are cognizable only if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 544 (7th Cir.1988) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976)), cert. denied, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). The basis for this rule is that "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985). Thus, we must ask whether Noreuil's disparate impact discrimination claim can be considered "like or reasonably related to" and "growing out of" the allegations of retaliatory discharge in his second administrative charge.

 In general, we have held that retaliation and age discrimination claims are sufficiently dissimilar that an administrative charge of one fails to support a subsequent civil suit for the other. *O'Rourke v. Continental Casualty Co.*, 983 F.2d 94, 97 (7th Cir.1993); *Steffen*, 859 F.2d at 544–45; *see also Ekanem v. Health & Hosp. Corp. of Marion County, Ind.*, 724 F.2d 563, 573 (7th Cir.1983) ("A charge that a given wage is too low because of unlawful *retaliation* is not the same as a charge that a given wage is too low because of unlawful *race discrimination.*" (emphasis in original)), *cert. denied*, 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984). Such a determination would seem especially correct in this case because a theory of disparate impact is even more conceptually distinct from a claim of retaliation than an ordinary discrimination charge of disparate treatment. To explain, a retaliation claim concerns the employer's intent and motivation, asking whether an adverse employment consequence was deliberately attached to the plaintiff's exercise of a protected right under the Act. *O'Rourke*, 983 F.2d at 97. A claim of disparate treatment also turns on the employer's intent, but the different relevant question is whether the employer's adverse employment decision was motivated by the plaintiff's age. *Steffen*, 859 F.2d at 545. Disparate impact, on the other hand, does not necessitate a showing of discriminatory intent at all, but rather it requires statistical correlation evidence demonstrating that a specified employment practice of the defendant has a disproportionately negative effect on members of the plaintiff's protected class. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir.1996) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 (1988)).

Thus, an administrative agency investigating a retaliation claim would almost certainly fail to inquire into a theory of disparate impact discrimination—a difficulty borne out by the IDHR's refusal in this case to address Noreuil's age discrimination claims because his second administrative charge concerned only a claim of retaliation. Given that a primary purpose of the scope-of-the-charge doctrine is to prevent "circumvent[ion of] the EEOC's investigatory and conciliatory role,"

*Babrocky,* 773 F.2d at 863, refusing to allow Noreuil's charge of retaliation to support his subsequent disparate impact claim would seem particularly appropriate.

Of course, simple technicalities such as "[w]hat boxes, for instance, are checked on the EEOC form do not necessarily control the scope of a subsequent complaint." *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.,* 985 F.2d 364, 368 (7th Cir.1993). Therefore, we have considered retaliation and age discrimination claims to be adequately related under the scope-of-the-charge doctrine where "the factual relationship of the ... charges ... is so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the remedial purposes of the Act." *Id.* But Noreuil's charge of retaliation and his subsequent claim of disparate impact do not share such a close relationship. As Noreuil has admitted, his second administrative charge simply alleges that Peabody forced his retirement in retaliation for his filing an earlier charge. Not until his appeal of the IDHR ruling and the subsequent civil suit did Noreuil in any way express a claim that Peabody's policies worked a discrimination against him on the basis of age.

Noreuil contends that his failure to include a claim of age discrimination in his second administrative charge should be excused on the ground that it was not until two months after the filing of the charge that the EEOC announced its finding that Peabody's Fair Treatment Review Procedure was retaliatory. We can make little sense of this argument, however, because Noreuil's civil suit concerns his forced retirement and has nothing whatsoever to do with the Fair Treatment Review Procedure. Besides, the EEOC found that the review procedure was *retaliatory,* not that it was discriminatory on the basis of age, and thus the EEOC's findings could in no way have alerted Noreuil to any age discrimination by Peabody.

We note finally that even were we to assume that Noreuil's second administrative charge was a sufficient administrative predicate to his disparate impact claim of age discrimination (and, for that matter, to assume that a disparate impact claim is cognizable under the ADEA—a still-unresolved question in this Circuit, *see, EEOC v. Francis W. Parker Sch.,* 41 F.3d 1073, 1077–78 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995), and *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125–26 (7th Cir.1994)), Noreuil's claim would nonetheless fail to survive summary judgment. As discussed above, a disparate impact theory of discrimination requires the plaintiff to put forth, statistical evidence demonstrating that the challenged employment practice has a disproportionately negative effect upon members of the plaintiff's protected class—here, persons over forty. *See Vitug,* 88 F.3d at 513 (citing *Watson,* 487 U.S. at 994, 108 S.Ct. at 2789). Noreuil has offered no such evidence. In fact, when asked at oral argument what specific evidence existed in the record to support a disparate impact claim of discrimination, Noreuil's attorney responded:

> [It's] what I call the flow of the gastric juices. And there is something about this whole situation which for the last five years has told me something's wrong, there has to be something here. I haven't found it. There's no overt discrimination. There's no obvious attempt to discriminate against Mr. Noreuil on the basis of age. But we think there are subtle, little factors that suggest that there *may* have been age discrimination in the decision to lay him off in July of 1992.

Counsel's inexplicit gut feelings notwithstanding, Noreuil has failed to put forth any evidence whatsoever supporting his claim that Peabody's salary continuation and return-to-work policies have a disproportionately adverse impact on persons over the age of forty, and thus his claim would fail even had it been properly preceded by a timely administrative filing.

The district court's entry of summary judgment in favor of the defendant is AFFIRMED.