# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1279

_____

Lucille K. Melvin,

             Appellant,

v.

Car-Freshener Corporation,

             Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Southern District of Iowa.
\*
\*
\*

_____

Submitted: June 16, 2006
Filed: July 12, 2006

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Lucille K. Melvin (Melvin) appeals from the district court's[1] order granting summary judgment to Car-Freshener Corporation (Car-Freshener) on Melvin's common law claim of retaliatory discharge in violation of public policy. We affirm.

_____

[1]The Honorable Thomas J. Shields, United States Magistrate Judge for the Southern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.    BACKGROUND

Car-Freshener, a company that manufactures car air fresheners including the ubiquitous "Little Trees" freshener, hired Melvin in 1996 as an at-will employee to work in its DeWitt, Iowa, plant. In November 2002, Car-Freshener experienced a downturn in business and laid off approximately 50% of its workforce. Due to production demands, staff limitations resulting from the layoffs, and employee vacations during the holiday season, Car-Freshener reassigned Melvin from her packer position to a position on the staple line. Melvin informed Sue Patchin (Patchin), Car-Freshener's DeWitt plant production coordinator, and Chris Walters (Walters), Car-Freshener's DeWitt plant personnel manager, that she had suffered a workplace injury to her shoulder in 1998 while working on the staple line and had been restricted from that work.[2] In response, Patchin said "[t]he only job opening is the staple line." Patchin told Melvin she could not change Melvin's assignment and Melvin could work on the staple line or be laid off.

Melvin agreed to work on the staple line, and on January 21, 2003, on her fifth non-consecutive day of such work, Melvin reported to her immediate supervisor she was experiencing shoulder pain. Upon learning of Melvin's complaint, Walters sent Melvin for an examination by a physician, who concluded Melvin should be restricted from working on the staple line, but could continue to work as a packer. Walters sent Melvin home to avoid risking further injury, with instructions to return the next day. Walters later called Melvin at home and informed her she was being temporarily laid off because there was no work available in the packing department. Before Melvin's injury report and layoff, three other laid off employees were called back to work in the packing department. Melvin testified she understood she was laid off because she "was not a diversified person."

---

[2]In January 1999, Car-Freshener accommodated Melvin's restriction by transferring her to the packing department.

Car-Freshener subsequently changed Melvin's status from temporary layoff to workers' compensation because Melvin was eligible for workers' compensation temporary disability benefits. Melvin received workers' compensation benefits from January 21, 2003, through March 10, 2003, at which point she was placed on six-month temporary layoff. Melvin never returned to work for Car-Freshener. On September 10, 2003, in accordance with Car-Freshener's company policy, Melvin's layoff became permanent, the equivalent of a termination. Melvin filed a notice seeking workers' compensation benefits on August 12, 2004.

Melvin filed suit in Iowa state court on November 19, 2004, alleging she had been terminated in retaliation for suffering a work related injury and filing a workers' compensation claim in violation of public policy. Car-Freshener removed the case to federal court, and moved for summary judgment. The district court granted Car-Freshener summary judgment, finding no genuine issues of material fact whether Melvin's termination and her filing a workers' compensation claim were causally connected. Melvin appeals.

## II. DISCUSSION

We review de novo a grant of summary judgment, applying the same standard as the district court. Barrera v. Con Agra, Inc., 244 F.3d 663, 665 (8th Cir. 2001). We must determine "whether the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id.

This is a diversity action, and Iowa law governs issues of substantive law. Id. As we summarized in Barrera,

> In Iowa, an employer's ability to discharge an employee is limited when the discharge clearly violates the well-recognized and defined public policy of the state. Discharge in retaliation for filing a worker's compensation claim clearly violates Iowa's public policy. To prevail on

a retaliatory discharge claim, [Melvin] must establish (1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment action; and (3) that there existed a causal connection between the protected activity and [her] termination. The causation standard in a common-law retaliatory discharge case is high, however, and the employee's engagement in protected conduct must be the *determinative* factor in the employer's decision to take adverse action against the employee.

Id. (citations, quotations, and alterations omitted). The parties agree the only issue on this appeal is whether Melvin presents sufficient evidence to create a jury question regarding whether a causal connection exists between Melvin's workers' compensation claim filing and her termination.

We agree with the district court's conclusion Melvin fails to demonstrate any genuine issue of material fact to establish a causal connection between her filing a workers' compensation claim and her termination. Like the plaintiff in Barrera, Melvin relies extensively, and virtually exclusively, on the temporal proximity between the two events, arguing "the temporal element . . . is compelling." "Under Iowa law, the fact that [Melvin] was fired after filing a workers' compensation claim is not alone sufficient to prove causation. Iowa law demands, rather, that [Melvin] produce evidence demonstrating that [her] workers' compensation claim was the determinative factor in [Car-Freshener]'s decision to terminate [her] employment." Id. at 665-66 (citation omitted). Melvin has failed to present evidence demonstrating the existence of a genuine issue of material fact that her filing or threat of filing a workers' compensation claim was the determinative factor in her termination other than the close proximity in time between her injury and being placed on temporary layoff. As a matter of Iowa law, this is insufficient to establish a prima facie case of retaliatory discharge.

-4-

Melvin attempts to cure this defect by claiming Car-Freshener's failure to place Melvin in its Temporary Alternative Worker Opportunities Program for injured workers demonstrates Car-Freshener's termination decision was causally connected to her workers' compensation claim. Melvin ignores the program's language, which states alternative work is provided "whenever possible," and the undisputed evidence is Melvin's assignment under the program was not possible, given Car-Freshener's business downturn and lack of work. Moreover, Melvin did not have any employment contract and was an at-will employee.

Finally, Melvin compares her 1998 work related shoulder injury and her assignment to the packing department in 1999 with her January 21, 2003, identical shoulder injury and layoff, claiming the comparison somehow supports a causally related retaliation in 2003. The comparison ignores the significant differences between Car-Freshener's business and its workforce needs in 1999 and in 2003. Thus, the comparison fails.

## III. CONCLUSION

For the reasons stated, we affirm the district court's order granting summary judgment in favor of Car-Freshener.

LAY, Circuit Judge, dissenting

I respectfully dissent. Melvin has presented sufficient evidence from which a reasonable jury could infer that she was terminated because her injury qualified her for workers' compensation benefits. Although temporal proximity between protected conduct and discharge is insufficient to establish retaliation under Iowa law, Hulme v. Barrett, 480 N.W.2d 40, 43 (Iowa 1992), temporal proximity coupled with another aggravating factor, however undefined, can support an inference of retaliation for purposes of summary judgment. See Walters v. United States Gypsum Co., 537 N.W.2d 708, 712 (Iowa 1995).

Here, Melvin was laid off the same day she qualified for workers' compensation benefits. Plant production coordinator Chris Walters stated Melvin was laid off because there were no positions available in the pack department. However, Car-Freshener rehired three individuals to work in the pack department just one week prior to Melvin's layoff. Moreover, Walters later stated Melvin was not placed in the pack line due to concerns it would further aggravate her injuries.

Car-Freshener emphasizes its economic downturn as the reason for Melvin's termination and the majority concludes Melvin cannot establish her engagement in a protected activity was the determinative factor in this case. However, I submit the inconsistencies in Car-Freshener's explanations, coupled with the timing of Melvin's termination, are enough evidence from which a reasonable jury could infer Melvin was terminated because she qualified for workers' compensation benefits. "A factor is determinative if it is the reason that 'tips the scales decisively one way or the other,' *even if it is not the predominate reason behind the employer's decision.*" Teachout v. Forest City Cmty. Sch. Dist., 584 N.W.2d 296, 302 (Iowa 1998) (emphasis added) (quoting Smith v. Smithway Motor Xpress, Inc., 464 N.W.2d 682, 686 (Iowa 1990)).

Too many courts in this circuit, both district and appellate, are utilizing summary judgment in cases where issues of fact remain. This is especially true in cases where witness credibility will be determinative. In these instances, a jury, not the courts, should ultimately decide whether the plaintiff has proven her case. Summary judgment should be the exception, not the rule. It is appropriate "*only . . . where it is quite clear what the truth is, . . . for the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.*" Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962) (emphasis added) (citation and internal quotations omitted).

It is undeniable that summary judgment is a valuable tool, the use of which allows overextended courts to remove cases that lack merit from their dockets. See

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). However, in accomplishing this goal, we have an obligation not to "overlook[] considerations which make . . . summary judgment an inappropriate means to that very desirable end." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944). As Justice Black explained,

> The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment.

Adickes v. S.H. Kress & Co., 398 U.S. 144, 176 (1970) (Black, J., concurring).

I express no opinion as to whether Melvin would ultimately be able to convince a jury in this case. However, she and all other similarly-situated plaintiffs should be afforded the opportunity to do so.

_____